**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY ALSTON and AYANA HICKS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>KIA AMERICA, INC. and HYUNDAI MOTOR AMERICA CORPORATION,<br><br>    Defendants. | Case No.:  2:22-cv-4376<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, GREGORY ALSTON and AYANA HICKS ("Plaintiffs"), individually and on behalf of the Classes, state and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and on behalf of Classes of similarly situated persons or entities against Defendants Kia America, Inc. ("Kia") and Hyundai Motor America Corporation ("Hyundai") (collectively "Defendants"), who purchased or leased vehicles manufactured and sold by Defendants (collectively, "Vehicles").

2.     Defendants manufacture and sell motor vehicles in the United States and Pennsylvania. These products include popular models like the Hyundai Sonata and Hyundai Santa Fe and the Kia Sportage and Kia Sorento.

3.     The Vehicles suffer from a significant defect: they do not include an engine immobilizer.

4.     Engine immobilizers are designed and used to prevent vehicle theft when a vehicle is left unattended. Engine immobilizers work by transmitting a code to the vehicle when the car's

key is inserted in the ignition switch or a key fob is inside the vehicle. Because Defendants'
Vehicles suffer from a defect, thieves are able to start the Vehicles through the steering column
without a car's specific smart key using a screwdriver, knife, USB charging cord, or other metal
object. Videos are readily available online providing would-be criminals with a tutorial on how to
exploit the missing immobilizer in the Vehicles.

5.      Theft or attempted theft of Defendants' Vehicles is becoming increasingly reported
and has risen substantially across the United States generally and in Pennsylvania specifically, as
knowledge of the defect is now widespread.

6.      Defendants are aware that their Vehicles lack engine immobilizers. Indeed,
immobilizers are required in foreign countries and installed on similar vehicles that Defendants
manufacture and sell in those countries. Upon information and belief, Defendants sell other model
vehicles in the United States with engine immobilizers.

7.      Defendants are aware through media and steering wheel replacement part sales that
thefts of the Vehicles manufactured and sold by them have increased nationwide.

8.      Despite the rise in Vehicle thefts, Defendants have not issued a recall or offered to
install engine immobilizers in the affected Vehicles.

9.      Defendants have announced that all Hyundai and Kia vehicles after November 1,
2021, including the Hyundai Sonata, which Plaintiffs owned, will come standard with anti-theft
immobilizers.[1]

10.     Plaintiffs purchased a Vehicle manufactured by Defendants which suffers from the
defect. Plaintiffs would not have purchased the Vehicle or would have paid less for the Vehicle

---

[1] Sasha Lekach, *Kia, Hyundai Offer Owners Security Kits, Locks After Targeted Car Thefts*, Forbes.com (Oct. 3,
2022) https://www.forbes.com/wheels/news/kia-hyundai-car-thefts-security-kit/.

had Plaintiffs known about the defect.

11.     As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, consumers of the Vehicles, including Plaintiffs, have suffered an ascertainable loss, injury-in- fact, and otherwise have been harmed by Defendants' conduct.

## PARTIES

12.     Plaintiff Gregory Alston is a resident of the City of Philadelphia, County of Philadelphia, Pennsylvania.

13.     Plaintiff Ayana Hicks is a resident of the City of Philadelphia, County of Philadelphia, Pennsylvania.

14.     Defendant Kia America, Inc. is a California corporation with its principal place of business in California.

15.     Defendant Kia may accept service via its registered agent, CT Corporation System, at 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.

16.     Defendant Hyundai Motor America Corporation is a California corporation with its principal place of business in California.

17.     Defendant Hyundai may accept service via its registered agent, Corporation Service Company, at 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative class exceed $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Defendants.

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367 because all other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

20.     Defendants regularly and systematically conduct business and sell their products in this District to customers in this District, including to Plaintiffs and the Classes. As such, Defendants are subject to the jurisdiction of this Court.

21.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and regularly conduct business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.     THEFT OF DEFENDANTS' DEFECTIVE VEHICLES

22.     Thefts of Kia and Hyundai vehicles have risen dramatically nationwide and in the Philadelphia region.

23.     According to authorities, thieves are targeting Hyundai and Kia vehicles as "part of a TikTok challenge that teaches people how to start Hyundais and Kias with the use of a USB cable."[2] Videos on social media show how the Vehicles without immobilizers can be easily started (and therefore stolen) without physical keys by using the end of a USB cable or a screwdriver because they are not equipped with immobilizers that would require the presence of a key fob with a transponder.[3]

24.     In August 2022, 35 Hyundais and Kias were stolen in Philadelphia, Pennsylvania in one week alone.[4]

---

[2]  Walter Perez, *TikTok challenge sparks surge in car thefts across Philadelphia region, police say*, WPVI-TV, (Aug. 30, 2022), https://6abc.com/tiktok-challenge-usb-drive-car-thefts-hyundai-kia-vehicles/12178976/.

[3]  Fox 29 Philadelphia, *Police warn of new social media challenge that targets certain models of cars*, Fox 29 Philadelphia (Aug. 3,2022) https://www.fox29.com/news/police-warn-of-new-social-media-challenge-that-targets-these-kinds-of-vehicles.

[4]  Perez, *supra., n. 2.*

25.     In St. Louis, Missouri, Kia and Hyundai thefts account for nearly 77% of all vehicles stolen in 2022.[5] St. Louis city officials sent letters to Defendants threatening legal action if Defendants refused to act within 30 days, claiming, "the companies are contributing to a public nuisance in the city."[6]

26.     As of August 2022, thefts of Kias and Hyundais accounted for 38% of all car thefts in Columbus, Ohio.[7]

27.     In Colorado, auto theft is one of the fastest-growing crimes, and Kias and Hyundais have increasingly become targeted.[8] As of the end of August 2022, over 3,000 Kias and 3,000 Hyundais have been stolen – six times the number of Kias and Hyundais stolen in 2021.[9] In 2019, a little over 200 Kias and 200 Hyundais were stolen statewide in Colorado; the number doubled to 400 thefts of each manufacturers' cars in 2020, and doubled again in 2021, to more than 1,000 thefts.[10]

28.     According to CBS Colorado, "[t]he manufacturers say they are aware of what's happening and that thieves are targeting their keyed ignition vehicles that do not have engine immobilizer systems. Kia and Hyundai stopped using an anti-theft system in 2011, and now both companies say they have put them back into their newer models."[11]

29.     In St. Paul, Minnesota, thefts of Kia vehicles increased 1300% as of July 2022 from all of 2021, while thefts of Hyundai vehicles increased 584%.[12]

---

[5]   Kevin S. Held and Andy Banker, *City threatens to sue Kia and Hyundai, says cars are too easy to steal*, Nexstar Media Wire, (Aug. 30, 2022), https://www.wate.com/news/nexstar-media-wire/city-threatens-to-sue-kia-and-hyundai-says-cars-are-too-easy-to-steal/.

[6]   *Id.*

[7]   Fox 29 Philadelphia, *supra. n. 3.*

[8]   Karen Morfitt, *KIA and Hyundai vehicles an easy target for thieves, and social media is partly the reason why*, CBS Colorado, (Aug. 31, 2022), https://www.cbsnews.com/colorado/news/kia-and-hyundai-vehicles-easy-target-thieves-social-media/.

[9]   *Id.*

[10]   *Id.*

[11]   *Id.*

[12]   Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/.

30.     Ramsey County, Minnesota, Undersheriff Mike Martin stated, "[t]he Kias and Hyundais have what I call a design flaw that allows them to be stolen easier. All they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocket knife."[13]

31.     Beginning in the second quarter of 2022, Kia became the most-often stolen vehicle in Minneapolis, Minnesota.[14] To start off the third quarter of the year (August 2022), Kia and Hyundai vehicles were stolen more often than any other make.[15]

32.     Local Minnesota news station Fox 9 detailed the story of Lynda Pierce, whose Kia was stolen twice in a two-month period, which resulted in her paying two auto insurance deductibles on top of needed vehicle repairs.[16] The story noted that Pierce could no longer go to the grocery store or make medical appointments without her Kia.[17]

33.     Authorities told Fox 9 that Kia and Hyundai vehicles "are easier to steal because they lack an electronic security device called an engine immobilizer, making them easier to start without a key."[18]

34.     According to city police in Milwaukee, Wisconsin, Kia and Hyundai vehicles represented two out of every three vehicles stolen during the first half of 2021.[19]

35.     One car-repair facility owner, quoted by the *Milwaukee Journal Sentinel*, explained, "Kia thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank

[13] *Id.*

[14] Rose Schmidt, *Kias and Hyundais now most stolen cars in Minneapolis, data shows*, Fox 9 (Aug. 15, 2022), https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/.

the car and go."[20]

## II.   DEFENDANTS' DEFECTIVE VEHICLES.

36.     Defendants did not install engine immobilizers in their Vehicles.

37.     An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

38.     Defendants' Vehicles suffer from a defect because they do not include an engine immobilizer.

39.     If Defendants' Vehicles included an engine immobilizer, they would be more difficult to steal because a thief could not start or move the Vehicle without the Vehicle's key.

40.     Federal regulations require that a vehicle's engine cannot be started and that a vehicle cannot move when the vehicle's key is not present.

41.     Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) the normal activation of the vehicle's engine or motor; and (b) either steering, or forward self-mobility, of the vehicle, or both. 49 C.F.R. § 571.114.

42.     Federal Motor Vehicle Safety Standard ("FMVSS") 114 serves two purposes: to prevent auto theft and to prevent vehicle rollaway.

43.     Defendants' Vehicles suffer from a defect and do not comply with FMVSS 114 because when the key is removed from the starting system, the Vehicle's engine or motor can be activated, and removal of the key does not prevent steering or forward self-mobility.

44.     If Defendants' Vehicles were manufactured to comply with FMVSS 114, then Defendants' Vehicles would not be stolen at such alarming rates because when the key is removed

---

[20] *Id.*

from the starting system, both steering and forward self-mobility would be prevented.

45.      A vehicle without an engine immobilizer is not a reliable or safe vehicle and is less valuable than a vehicle with an engine immobilizer.

46.      A vehicle that does not comply with FMVSS 114 is not a reliable or safe vehicle and is less valuable than a vehicle that complies with FMVSS 114.

47.      Defendants knew their Vehicles were defective in that they did not have an engine immobilizer and did not comply with FMVSS 114, and they failed to disclose these defects to consumers like Plaintiffs and the putative Classes.

48.      Defendants knew that it was unsafe and dangerous for a Vehicle not to have an engine immobilizer.

49.      In response to the significant rise in theft of their Vehicles, spokespeople for Kia and Hyundai told *Car and Driver* magazine that every new Hyundai now has standard engine immobilizers, and that all 2022 Kias will also have the engine immobilizer fitted as standard equipment.[21]

50.      Defendants have not provided a solution to the thousands of Kia and Hyundai owners whose Vehicles remain without engine immobilizers.

### III.      PLAINTIFFS' USE OF DEFENDANTS' DEFECTIVE VEHICLES.

51.      In and around May 2019, Plaintiffs purchased a 2014 Hyundai in Philadelphia, Pennsylvania.

52.      On October 2, 2022, Plaintiffs discovered that their Hyundai Sonata had been stolen.

53.      Plaintiffs have not yet recovered their Vehicle.

---

[21] *Id.*

54.     The full extent of the costs resulting from the theft are ongoing.

55.     Plaintiffs have suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Vehicle's defect including, but not limited to, overpayment and complete loss of their Hyundai Sonata.

56.     Plaintiffs would not have purchased Defendants' defective Vehicle if they had known it was defective and more susceptible to theft.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of Classes of individuals defined as:

**Nationwide Class**:

All persons or entities who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.

**Pennsylvania Class:**

All persons or entities in Pennsylvania who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer.

58.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

59.     Excluded from the Classes are: (1) Defendants and any entity in which Defendants have a controlling interest; (2) officers, directors, assigns, and legal representatives of Defendants; (3) this Court and any of its employees assigned to work on the case, and the Judge to whom this case is assigned; and (4) all employees of the law firms representing Plaintiffs and the Classes.

60.     Plaintiffs seek only damages and injunctive relief and are not seeking for

themselves or any Class member recovery or compensation for personal injuries to body and mind, including wrongful death or emotional distress.

61.     This action is brought and may be properly maintained on behalf of each Class member.

62.     *Numerosity of the Classes:* The members of the Classes are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiffs and can only be determined through appropriate discovery, Plaintiffs believe the Classes are likely to include thousands of members based on the fact that Defendants distribute their Vehicles nationwide.

63.     The definitions of the Classes identify unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendants. Other than by direct notice by mail or email, proper and sufficient notice of this action may be provided to the Classes through notice published in newspapers or other publications.

64.     *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiffs and the Classes include, but are not limited to, the following:

a.     Whether the Vehicles fail under the implied warranty of usability;

b.     Whether the Vehicles fail under the implied warranty of merchantability;

c.     Whether Defendants failed to warn consumers regarding the risks of the Vehicles;

d.     Whether Defendants designed the Vehicles with a defect;

e.     Whether Defendants violated the Magnuson-Moss Warranty Act;

f.     Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

g.      Whether Defendants were unjustly enriched by the sale of the Vehicles;

h.      The appropriate nature of class-wide equitable relief; and

i.      The proper method or methods to determine and measure Plaintiffs' and the Classes' damages.

65.     *Typicality:* Plaintiffs' claims are typical of all members of the Classes. The evidence and the legal theories regarding Defendants' alleged wrongful conduct committed against Plaintiffs and the Classes are substantially the same because all putative Class members purchased Defendants' Vehicles for personal use and all putative Class members overpaid or suffered a loss in value of their Vehicles. Accordingly, in pursuing their own self-interest in litigating their claims, Plaintiffs will also serve the interests of the Classes.

66.     *Adequacy:* Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiffs and the Classes that would make class certification inappropriate. Additionally, Plaintiffs' Counsel are competent to advance the interests of the Classes having been designated as Lead Counsel in numerous class cases. Plaintiffs and their Counsel intend to prosecute this action vigorously.

67.     *Predominance and Superiority:* This matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and the Classes to individually seek redress for Defendants' wrongful conduct. Even if any individual person or group(s) of the Classes could afford individual

litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Classes and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the Classes will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy and allowing Defendants to retain the proceeds of their ill-gotten gains.

68.     Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Classes. To the extent any further notices may be required, Plaintiffs anticipate the use of additional media or mailings.

## CAUSES OF ACTION

### COUNT I

### BREACH OF THE IMPLIED WARRANTY OF USABILITY
### (On Behalf of Plaintiffs and the Classes)

69.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

70.     Defendants, as manufacturers of the Vehicles, impliedly warranted to Plaintiffs and the Classes that the Vehicles were usable for their ordinary and intended use.

71.     Defendants breached the implied warranty of usability in connection with the sale

and distribution of the Vehicles. At the point of sale, the Vehicles while appearing normal, contained defects as set forth herein rendering them less valuable than warranted.

72.     Defendants, their agents and their employees knew or should have known that the Vehicles suffered from a defect that increases the risk of the Vehicle being stolen to such an extent that the Vehicles are less valuable than warranted.

73.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the Vehicles. Plaintiffs and the Classes reasonably expected, at the time of purchase, that the Vehicles were usable for their ordinary and intended use.

74.     Had Plaintiffs and Class members known they would not be able to use their Vehicles, they would not have purchased them or would have paid significantly less for them.

75.     As a direct and proximate result of Defendants' breach of the implied warranty of usability, Plaintiffs and the Classes have sustained damages in an amount to be determined at trial.

## COUNT II

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and the Classes)

76.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

77.     Defendants, as manufacturers of the Vehicles, impliedly warranted to Plaintiffs and the Classes that the Vehicles were of merchantable quality and safe for their ordinary and intended use.

78.     Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Vehicles. At the point of sale, the Vehicles while appearing normal, contained defects as set forth herein rendering them less safe and less reliable for personal use.

79.     Had Plaintiffs and the Classes known the Vehicles were less safe and less reliable

for use, they would not have purchased them.

80.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the Vehicles. Plaintiffs and the Classes reasonably expected, at the time of purchase, that the Vehicles were safe for their ordinary and intended use.

81.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Classes have sustained damages in an amount to be determined at trial.

## COUNT III

### NEGLIGENT FAILURE TO WARN
### (On Behalf of Plaintiffs and the Classes)

82.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

83.     Defendants owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Vehicles. Defendants knew or should have known of the true risks but failed to warn Plaintiffs and Class members.

84.     Defendants' negligent breach of duty caused Plaintiffs and Class members economic damages and injuries in the form of less reliable and less safe Vehicles.

85.     Plaintiffs and Class members would not have purchased, chosen, and/or paid for all or part of the Vehicles had they known the risks associated with purchasing the Vehicles.

86.     Plaintiffs and the Classes suffered damages in an amount to be determined at trial.

## COUNT IV

### STRICT LIABILITY – DESIGN DEFECT
### (On Behalf of Plaintiffs and the Classes)

87.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

88.     Defendants designed, manufactured, and/or supplied the Vehicles in question within the ordinary course of their business.

89.     Plaintiffs and the Class members purchased and own Defendants' Vehicles.

90.     Defendants' Vehicles contain a design defect, including among other things, that Defendants manufactured and designed the Vehicles without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Vehicles are easier to steal than vehicles with engine immobilizers and are therefore unsafe and worth less than if they had engine immobilizers.

91.     Defendants knew or should have known of the dangerous and defective nature of the Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

92.     Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and the Classes and failed to warn and/or instruct Plaintiffs and the Classes of the defective and unreasonably dangerous nature of the Vehicles.

93.     Defendants' defective and unreasonably dangerous Vehicles directly and proximately caused economic injuries to Plaintiffs and the Classes.

94.     Plaintiffs and the Classes leave their Vehicles unattended and without a key, which is a manner of use reasonably anticipated by Defendants.

95.     As a result of the defect in Defendants' Vehicles, the Vehicles are unreasonably

dangerous and defective when put to the use anticipated by Defendants.

96.     As a direct and proximate result of the dangerous and defective condition of Defendants' Vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Classes have suffered economic injuries.

97.     Plaintiffs and the Classes' injuries include, but are not limited to, the difference in value between a vehicle with an engine immobilizer and one without, the purchase price of any device intended to prevent theft, and increased insurance premiums due to the design defect.

## COUNT V

### VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT
#### (On Behalf of Plaintiffs and the Classes)

98.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

99.     Congress enacted the MMWA, 15 U.S.C. §§ 2301 *et seq.*, to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id.*, 15 U.S.C. § 2310(d)(1).

100.     Defendants' Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

101.     Plaintiffs and the Classes are "consumers" as defined in 15 U.S.C. § 2301(3).

102.     Defendants are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. §§ 2301(4) & (5), respectively.

103.     In connection with the sale and/or lease of the Vehicles, Defendants supplied Plaintiffs and the Classes with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

104.     15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA],

or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

105.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

106.   Defendants provided Plaintiffs and the Classes with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

107.   Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiffs and the Classes under 15 U.S.C. § 2310(d)(1). The defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

108.   Plaintiffs and the Classes used their respective Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

109.   Plaintiffs and the Classes seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Vehicles, insurance deductibles to get the stolen Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Vehicles, and/or the diminution in value of stolen

Vehicles that were not totaled.

110.    The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiffs and the Classes seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs and the Classes also seek to enjoin Defendants from acting unlawfully as alleged herein.

111.    Plaintiffs and the Classes are entitled to costs and expenses, including attorneys' fees in the Court's discretion. 15 U.S.C. § 2310(d)(2).

### COUNT VI

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Classes)

112.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

113.    Plaintiffs and the Class members conferred a tangible and material economic benefit upon Defendants by purchasing the Vehicles. Plaintiffs and Class members would not have purchased, chosen and/or paid for all or part of Vehicles had they known the true risks of using the Vehicles while Defendants cannot provide a timely repair or replacement for the Vehicles. Under these circumstances, it would be unjust and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiffs and the Classes.

114.    Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expense of Plaintiffs and the Class members who endure being exposed to the risk of their Vehicles being stolen and can no longer use their Vehicles safely.

115.    Defendants' retention of the benefit conferred upon them by Plaintiffs and the Classes would be unjust and inequitable.

116.    Plaintiffs and the Classes suffered damages in an amount to be determined at trial.

## COUNT VII

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (On Behalf of Plaintiffs and the Pennsylvania Class)

117.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

118.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Stat. Ann. § 201-3.

119.    Defendants' design, manufacture, distribution, marketing, advertising, labeling, and sale of the Vehicles constitutes "trade and commerce" under 73 Pa. Stat. Ann. § 201-2(3).

120.    Defendants violated the UTPCPL by representing that the Vehicles have certain safety characteristics and benefits that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); failing to comply with the terms of a written guarantee or warranty given to the buyer (73 Pa. Stat. Ann. § 201-2(4)(xiv)); and engaging deceptive conduct which creates a likelihood of confusion or misunderstanding about the Vehicles (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

121.    Defendants' deceptive conduct and their false and misleading statements about the Vehicles' safety and dependability and omissions regarding the Vehicles' defect, which causes the Vehicles to be easily stolen, are facts that a reasonable person would have considered material in deciding whether or not to purchase or lease (or how much a person was willing to pay to purchase or lease) the Vehicles.

122.    Defendants' materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiffs and members of the Pennsylvania Class,

and were likely to mislead reasonable consumers, including Plaintiffs and Pennsylvania Class members.

123.   Had Defendants disclosed all of the material information regarding the Vehicles' defect, Plaintiffs and the other Pennsylvania Class members would not have purchased or leased Vehicles or would have paid less to do so.

124.   Defendants' deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Pennsylvania Class.

125.   Plaintiffs and the other Pennsylvania Class members justifiably acted or relied to their detriment upon Defendants' misrepresentations and omissions of fact, as evidenced by Plaintiffs and the other Pennsylvania Class members' leasing and purchasing of Vehicles.

126.   As a direct and proximate result of Defendants' acts and practices, Plaintiffs and the other Pennsylvania Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Pennsylvania Class members would not have purchased or leased the Vehicles or would have paid less for them had Defendants disclosed the truth about the Vehicles' defect. Plaintiffs and the other Pennsylvania Class members also suffered diminished value of their Vehicles.

127.   Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiffs and the Pennsylvania Class also seek an order for: actual and treble damages; appropriate injunctive relief (including requiring Defendants to engage in a state of the art notice program to notify owners and lessees to stop using their Vehicles and to offer Pennsylvania Class members free loaner vehicles of the same class as their own Vehicles, covered by the same warranties, until their Vehicles can be repaired and rendered safe); costs; and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, demand a jury trial

on all claims so triable and judgment as follows:

A.   Certifying the proposed Nationwide Class, appointing Plaintiffs as representatives of the Nationwide Class, and appointing counsel for Plaintiffs as Lead Counsel for the Nationwide Class;

B.   Certifying the proposed Pennsylvania Class, appointing Plaintiffs as representatives of the Pennsylvania Class, and appointing counsel for Plaintiffs as Lead Counsel for the Pennsylvania Class;

C.   Finding that Defendants breached the implied warranty of usability;

D.   Finding that Defendants breached the implied warranty of merchantability;

E.   Finding that Defendants negligently failed to warn Plaintiffs and the Classes;

F.   Finding that Defendants' Vehicles contain a design defect;

G.   Finding that Defendants violated the Magnuson-Moss Warranty Act;

H.   Finding that Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

I.   Finding that Defendants were unjustly enriched by their sale of the Vehicles;

J.   Awarding damages in an amount according to proof;

K.   Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

L.   Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

M.   Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Classes, hereby demand a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  November 1, 2022,                Respectfully submitted,

                                         **SPECTOR ROSEMAN & KODROFF, P.C.**


                                         **BY:** */s/ William G. Caldes*
                                                 William G. Caldes (PA Bar I.D. No. 75842)
                                                 Jeffrey J. Corrigan (*Pro Hac Vice*)
                                                 Jeffrey L. Spector (PA Bar I.D. No. 207208)
                                                 Rachel E. Kopp (PA Bar I.D. No. 92070)
                                                 2001 Market Street, Suite 3420
                                                 Philadelphia, PA  19103
                                                 215-496-0300 (Tel)
                                                 215-496-6611 (Fax)
                                                 bcaldes@srkattorneys.com
                                                 jcorrigan@srkattorneys.com
                                                 jspector@srkattorneys.com
                                                 rkopp@srkattorneys.com

                                                 Michael J. Boni (PA Bar I.D. No. 52983)
                                                 Joshua D. Snyder (PA Bar I.D. No. 88657)
                                                 John E. Sindoni (PA Bar I.D. No. 91729)
                                                 BONI, ZACK & SNYDER LLC
                                                 15 St. Asaphs Road
                                                 Bala Cynwyd, PA 19004
                                                 610-822-0200 (Tel)
                                                 610-822-0206 (Fax)
                                                 mboni@bonizack.com
                                                 jsnyder@bonizack.com
                                                 jsindoni@bonizack.com

                                                 David P. McLafferty (PA Bar I.D. No. 61118)
                                                 McLafferty Law Firm, P.C.
                                                 Attorneys at Law
                                                 923 Fayette Street
                                                 Conshohocken, PA 19428
                                                 610-940-4000 ext. 12 (Tel)
                                                 dmclafferty@mclaffertylaw.com

                                                 *Attorneys for Plaintiffs*